UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 24-1285 (RC) |
| v. | : : | Re Document No.: | 9 |
| DAVID RICHARDSON, *et al.*, | : : | | |
| Defendants. | : : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' MOTION TO DISMISS**

**I.  INTRODUCTION**

In October 2018, Congress passed the Disaster Recovery Reform Act, which, among other things, directed the Administrator[1] of the Federal Emergency Management Agency ("FEMA"), a subdivision of the Department of Homeland Security (collectively, "Defendants"), to define the terms "resilient" and "resiliency" in a final rule by April 2020.  To date, that rulemaking has not occurred.  In May 2024, five nonprofit groups committed to environmental and clean energy causes ("Plaintiffs") brought this suit under the Administrative Procedure Act, 5 U.S.C. § 706(1), seeking a court order compelling FEMA to issue a final rule defining those terms.  In July 2024, FEMA issued a notice of proposed rulemaking that would define the terms "resilient" and "resiliency."  But no final rule has been issued.  In October 2024, Defendants moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(1), arguing that this

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), former Administrator Deanne Criswell has been substituted for her successor.

Court lacks subject matter jurisdiction.  For the reasons stated below, Defendants' motion to dismiss is granted.

## II.  BACKGROUND

"The Stafford Act authorizes the President to provide relief in response to 'major disasters.'"  *Barbosa v. U.S. Dep't of Homeland Sec.*, 916 F.3d 1068, 1069 (D.C. Cir. 2019); *see* Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121 *et seq.*, Pub. L. No. 100-707, 102 Stat. 4689 (1988).  The President has delegated that authority to FEMA.  *Barbosa*, 916 F.3d at 1069.  In 2018, Congress passed the Disaster Recovery Reform Act ("DRRA"), which amended the Stafford Act.  Pub. L. No. 115-254, Div. D, 132 Stat. 3186, 3438 (2018).  In relevant part, the DRRA required that

> [n]ot later than 18 months after October 5, 2018, the President, acting through the Administrator of the Federal Emergency Management Agency, and in consultation with the heads of relevant Federal departments and agencies, shall issue a final rulemaking that defines the terms "resilient" and "resiliency" for purposes of this subsection.

42 U.S.C. § 5172(e)(5)(A).  The term "resiliency" does not appear in that subsection, and the term "resilient" appears only once:

> For the purposes of this section, for disasters declared on or after August 1, 2017, or a disaster in which a cost estimate has not yet been finalized for a project, or for any project for which the finalized cost estimate is on appeal, the President shall estimate the eligible cost of repairing, restoring, reconstructing, or replacing a public facility or private nonprofit facility—
> . . .
> in a manner that allows the facility to meet the definition of resilient developed pursuant to this subsection.

*Id.* § 5172(e)(1)(A)(iii).  Reading these provisions together, Congress directed FEMA to define "resilient" in a final rule by April 5, 2020, for purposes of estimating eligible costs.  FEMA has not yet done so.

In February 2024, Plaintiff Center for Biological Diversity, a nonprofit conservation organization, sent FEMA a letter "urging the agency to finally comply" with this mandate. Compl. ¶¶ 5, 10, ECF No. 1. And before filing this suit, Plaintiffs "submitted a Rulemaking Petition to FEMA proposing new 'Energy Justice Priorities' that would prioritize distributed renewable energy, energy demand reductions, and electrification in all FEMA funding for energy needs." *Id.* ¶ 12. FEMA did not respond, so in May 2024, Plaintiffs filed this lawsuit. *Id.* ¶ 5.

Plaintiffs are five nonprofit organizations in the United States and Puerto Rico with climate and environmental interests: the Center for Biological Diversity, Comité Dialogo Ambiental, Inc. ("CDA"), Healthy Gulf, New York Communities for Change ("NYCC"), and The Vessel Project of Louisiana ("The Vessel Project"). *Id.* ¶¶ 10, 15, 22, 29, 35. Plaintiffs believe that FEMA "currently focuses assistance related to energy needs on fossil fuel infrastructure," and hope that—were FEMA to adopt their proposed definitions of "resilient" and "resiliency"—FEMA would spend its funding on "distributed renewable energy like rooftop and community-based solar, weatherization and energy efficiency initiatives, and beneficial electrification options such as heat pumps, electric stoves and electric vehicle charging." *Id.* ¶ 12.

Plaintiffs allege that they and their members are harmed by the status quo. For example, CDA's members live in the Salinas Municipality and Guayama Region in Puerto Rico, where there is a "fossil fuel-fired thermoelectric plant" and "coal plant." *Id.* ¶¶ 15, 17. "These fossil fuel power plants release enormous amounts of toxic pollutants into the environment," causing harm to residents, including increased risk of "cancer, respiratory issues, . . . miscarriage, and other health problems." *Id.* ¶ 17. Plaintiffs' members also suffer from "frequent power outages and reliability issues," which they attribute to reliance on "centralized transmission and

distribution systems" that rely on "fossil fuel energy infrastructure." *Id.* ¶¶ 16, 18, 25, 37.  These power outages also disrupt Plaintiffs' work. *Id.* ¶¶ 18, 20.  Plaintiff The Vessel Project suffered a unique harm in April 2024 when a tornado damaged its office. *Id.* ¶ 38.  CDA, Healthy Gulf, NYCC, and The Vessel Project allege that their "members live in communities where FEMA is active" and currently "funding the reconstruction of the fossil fuel grid rather than distributed renewable energy alternatives." *Id.* ¶¶ 19, 26, 32, 39.  Plaintiffs' Complaint asks this Court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), specifically by ordering Defendants to "promptly" issue a final rule defining the terms "resilient" and "resiliency."  Compl. at 16–17.

In July 2024, FEMA issued a notice of proposed rulemaking that would define the terms "resilient" and "resiliency."[2]  Update of FEMA's Public Assistance Regulations, 89 Fed. Reg. 54966, 54971 (proposed July 2, 2024).  FEMA has not issued a final rule defining those terms.

In October 2024, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).  Defs.' Mot. to Dismiss, ECF No. 9.  Defendants argue that Plaintiffs lack standing and that their notice of proposed rulemaking moots this case.  *See* Defs.' Mem. P. & A. in Supp. Mot. to Dismiss ("MTD") at 3, ECF No. 9-1.  The motion is now fully briefed and ready for this Court's consideration.

---

[2] FEMA proposed "defining the term 'resilient' as 'able to prepare for threats and hazards, adapt to changing conditions, and withstand and recover rapidly from adverse conditions and disruptions' and the term 'resiliency' as 'the ability to prepare for threats and hazards, adapt to changing conditions, and withstand and recover rapidly from adverse conditions and disruptions.'"  Update of FEMA's Public Assistance Regulations, 89 Fed. Reg. 54966, 54971 (proposed July 2, 2024).

### III.  LEGAL STANDARD

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), courts "construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged," and accepting those facts as true. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Article III courts are courts of limited jurisdiction. *NO Gas Pipeline v. FERC*, 756 F.3d 764, 767 (D.C. Cir. 2014).  For a court to have jurisdiction over a case or controversy, the party invoking the court's jurisdiction has the burden of establishing its standing. *Id.*  "To claim associational standing, Plaintiffs must show that (1) at least one of their members would have standing to sue in their own right, (2) the interests the members seek to protect are germane to their organizations' purposes, and (3) the members need not participate individually in the lawsuit." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 144 F.4th 296, 305 (D.C. Cir. 2025).  Only the first element is at issue here.

"An individual has Article III standing to sue when she can show: (1) she has suffered an 'injury in fact' that is concrete and particularized, and actual or imminent rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Where the injury is "procedural," courts relax the traceability and redressability requirements. *See Hawkins v. Haaland*, 991 F.3d 216, 224–25 (D.C. Cir. 2021).  But "[t]hese relaxed standards do not apply to the link between the government decision and the plaintiff's injury." *Id.* at 225; *see City of Dania Beach v. FAA*, 485 F.3d 1181, 1186 (D.C. Cir. 2007) ("Though this Court will assume a causal relationship between

5

the procedural defect and the final agency action, the petitioners must still demonstrate a causal connection between the agency action and the alleged injury.").

### IV.  ANALYSIS

Plaintiffs have failed to establish their standing to ask this Court to compel FEMA to issue a final rulemaking defining "resilient" and "resiliency."  Even assuming that Plaintiffs adequately alleged cognizable injuries, Plaintiffs fail to establish that their injuries are plausibly caused by FEMA's failure to define "resilient" and "resiliency" for purposes of estimating eligible costs.  For similar reasons, Plaintiffs also fail to establish that their injuries could plausibly be redressed by FEMA defining those terms.  Accordingly, the Court grants Defendants' motion to dismiss without reaching their mootness argument.

Where a plaintiff alleges a procedural injury—here, the failure to engage in the mandated rulemaking—a plaintiff must establish two links in the causal chain: "(1) a connection between the omitted procedure and a government decision and (2) a connection between the government decision and the plaintiff's particularized injury." *Hawkins*, 991 F.3d at 224.  Defendants concede that the first link is satisfied, but contest the second link.  *See* Defs.' Reply at 3, ECF No. 12.  Specifically, Defendants argue that "Plaintiffs do not plausibly allege that FEMA's failure to define the terms 'resilience' or 'resiliency' has caused them any injury, or that defining those terms would redress any such injury." *Id.*

Plaintiffs invoke 42 U.S.C. § 5172(e) as the basis of their alleged procedural injury.  Pls.' Opp'n at 4, 13–14, ECF No. 11.  As Plaintiffs explain, this provision "requires that FEMA begin, at minimum, estimating costs for replacing or reconstructing public and private non-profit facilities," in a way that meets the definition of resilient.  *Id.* at 4.  FEMA has not defined "resilient," so FEMA's cost estimates may not currently account for that definition.  That is the

scope of FEMA's alleged procedural wrongdoing. But a procedural right alone is insufficient to confer Article III standing. *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). Plaintiffs must connect this government inaction to their particularized injuries. *See Hawkins*, 991 F.3d at 224. Plaintiffs identify three types of injuries to support their standing: exposure to pollution that affects the health of Plaintiffs' members, power outages from centralized "fossil-fuel based" power infrastructure, and The Vessel Project's office, which was damaged in a storm and "might be eligible for FEMA relief." Pls.' Opp'n at 7, 10–11.

Even accepting that FEMA would adopt Plaintiffs' proposed definition of "resilient," Plaintiffs fail to establish how that definition, which would be used by FEMA to estimate eligible costs, would reduce their exposure to pollutants or reduce power outages. Correspondingly, Plaintiffs fail to establish that FEMA's failure to adopt that definition has caused their harm. According to Plaintiffs, their proposed "regulatory approach" would "(a) define certain energy demand reductions, zero-carbon energy technologies, and beneficial electrification technologies . . .; (b) explicitly recognize that, collectively, these definitions constitute 'resiliency' for FEMA . . .; and (c) require that '[i]n providing any financial assistance related to meeting energy needs . . . FEMA shall prioritize deployment of' these fossil-free measures.'" Pls.' Opp'n at 12. Plaintiffs explain that their approach seeks to "cabin [FEMA's] discretion by prioritizing certain spending by the agency." *Id.* at 13.

But Plaintiffs fail to explain how FEMA's cost estimates will cabin its discretionary *spending* authority. As Defendants point out, "Plaintiffs do not explain how defining those terms would affect how FEMA spends federal resources, much less cause FEMA to adopt spending priorities that Plaintiffs prefer." Defs.' Reply at 6. And it is the spending of "federal resources on distributed renewable energy and energy efficiency rather than funding the rebuilding of the

existing fossil fuel energy system" that Plaintiffs ultimately seek through this suit. *See* Compl. ¶¶ 21, 28, 34, 41. Plaintiffs appear to hide the ball on this issue by suggesting that under the DRRA, FEMA must "begin, *at minimum*, estimating costs" to meet the resiliency definition. Pls.' Opp'n at 4 (emphasis added). But Plaintiffs fail to provide any legal authority requiring FEMA to do anything more than estimate costs based on the definition of "resilient;" estimating costs would appear to fulfill FEMA's legal duties under 42 U.S.C. § 5172(e)(1)(A). The Court agrees with Defendants that § 5172(e)(1)(A) "merely directs the President to estimate certain costs in a certain way, without requiring FEMA to spend funds in any way." *See* Defs.' Reply at 6. Thus, it is unclear how FEMA's failure to define "resilient" for purposes of that subsection has any causal connection to the pollution and power outages Plaintiffs' members experience.

The Vessel Project's additional theory fares no better. Plaintiffs fail to explain why The Vessel Project's office would not have been damaged were FEMA to define "resilient," or why the office is currently ineligible for FEMA relief but would become eligible were FEMA to define "resilient." *See* Pls.' Opp'n at 11, 14.

In sum, Plaintiffs fail to make the attenuated connection showing that the government inaction—FEMA's failure to define "resilient"—caused their alleged harm. And on the other side of the coin, Plaintiffs fail to explain how defining a term used by FEMA to estimate repair costs, without cabining spending discretion, will plausibly ameliorate any of their alleged injuries. Given the statutory scheme at issue, this result is straightforward. And though Plaintiffs' injuries might *possibly* be reduced after the term "resilient" is defined in a final rulemaking, "a wholly speculative prospect of redress still does not pass muster." *See Narragansett Indian Tribal Historic Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020).

8

Because Plaintiffs have failed to plausibly establish their standing, this Court lacks subject matter jurisdiction over their claim and must dismiss the Complaint.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 15, 2025                                RUDOLPH CONTRERAS
                                                                                         United States District Judge